IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-02144-MSK-CBS

LEO LALA,

        Plaintiff,

v.

HARRY FRAMPTON,
EAST WEST RESORT TRANSPORTATION, LLC, d/b/a COLORADO MOUNTAIN
EXPRESS, and
EAST WEST PARTNERS, LLC.,

        Defendants.

## OPINION AND ORDER GRANTING MOTION TO DISMISS

**THIS MATTER** comes before the Court pursuant to Defendants' Motion to Dismiss the Amended Complaint **(# 36)**, the Plaintiff's response **(# 38)**, and the Defendants' reply **(# 40)**.[1]

## FACTS

According to the Amended Complaint **(# 35)**, the Plaintiff was the owner of Colorado Shuttle Service ("CSS"), a business that provided shuttle transportation between the Vail Valley and Denver International Airport. The Plaintiff owns a number of other businesses including an "auto brokering company" that obtains and sells "abandoned vehicles." The Defendants are the owners of Colorado Mountain Express ("CME"), a competing shuttle business. Defendant

---

[1] This motion supersedes a Motion to Dismiss **(# 7)** directed at the original Complaint, and the Court denies that earlier motion as moot.

Frampton is also the owner of Defendant East West Partners, Inc., which appears to be involved in some form of real property management, and which managed the Plaintiff's residence.

In April 2000, a representative of CME approached the Plaintiff about "working together to determine pricing and purchasing for the two shuttle services." The Plaintiff refused to discuss the issue "because he knew the conversations would be illegal." He also rebuffed several offers by CME to purchase CSS.

In the summer of 2000, with the intent to put CSS out of business, Defendant Frampton instructed an unnamed employee to allow a confederate into the Plaintiff's home to steal information about an auto transaction in which the Plaintiff's auto brokering business was involved. At Defendant Frampton's instruction, the employee turned the information over to the Vail Police Department, who charged the Plaintiff with motor vehicle theft. The Plaintiff was arrested in September 2000, and remained incarcerated until December 2001, when he "affirmed his innocence via an [*Alford*] plea and was released."[2] Nevertheless, the Plaintiff was unable to sustain the operation of CSS during his incarceration, and the company went out of business. The Plaintiff states that, immediately after CSS went out of business, CME increased its prices 35%.

The Amended Complaint alleges 11 causes of action: (i) that the Defendants conspired to monopolize the shuttle transportation industry in the Vail Valley in violation of the Sherman

---

[2]Under Colorado law, an *Alford* plea is one in which the defendant "consent[s] to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *People v. Schneider*, 25 P.3d 755, 759 (Colo. 2001). An *Alford* plea "the functional equivalent of a guilty plea." *Id.*

Anti-Trust Act, 15 U.S.C. § 1; (ii) civil conspiracy[3]; (iii) tortious interference with contractual relations between the Plaintiff and "several customers" who had "agreed to utilize plaintiff's business"; (iv) violation of the Colorado Consumer Protection Act, in that the Defendants committed an unspecified "unfair or deceptive trade practice"; (v) trespass, based on the unauthorized entry into the Plaintiff's residence; (vi) invasion of privacy, based on the unauthorized entry into the Plaintiff's residence; (vii) slander, in that the Defendants "published false reports of alleged illegalities by Mr. Lala to law enforcement officials"; (viii) slander per quod, based on the same reports to law enforcement; (ix) abuse of process, in that the Defendants caused the Plaintiff's arrest for purposes "other than to legally report an actual crime"; (x) fraudulent concealment, in that the "Defendants affirmatively acted to conceal their illegal actions" from the Plaintiff; and (xi) negligent supervision, based on the Defendants' improper supervision of the employee who allowed the intrusion into the Plaintiff's residence.

The Defendants move to dismiss **(# 36)** the Amended Complaint, focusing solely on the insufficiency of the antitrust claim, with the corresponding argument that, should the Court find that claim insufficient, it should decline to exercise supplemental jurisdiction over the remaining state law claims. With regard to the antitrust claim, the Defendants argue that: (i) the Plaintiff fails to state a claim for actual monopolization, in that he fails to allege facts showing a relevant geographic market, a relevant service market, the Defendants' acquisition of market power in that market through an act of monopolization with the appropriate intent, the Defendants' continued possession of market power in that market, an effect on interstate commerce, and the causation of an antitrust injury; (ii) the Plaintiff fails to state a claim for attempted

---

[3]The Court assumes that all of the tort claims are asserted to arise under Colorado law.

monopolization, in that he fails to allege facts showing a relevant geographic and service market, an anticompetitive act by the Defendants taken with appropriate intent, that the act created a dangerous probability of monopolization, an effect on interstate commerce, and the causation of an antitrust injury; (iii) the Plaintiff fails to state a claim for conspiracy to monopolize, in that he fails to allege an antitrust conspiracy formed with the appropriate intent, an overt act in furtherance of that conspiracy, that the conspiracy created a dangerous probability of monopolization, an effect on interstate commerce, and the causation of an antitrust injury; and (iv) that the *Noerr-Pennington* doctrine shields the Defendants from liability for turning the vehicle information over to police, regardless of the intent underlying that action.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). However, the Plaintiff must allege facts showing his entitlement to relief, and must plead more than "labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955,

4

1964-65 (2007). Although the Court treats all of the factual averments in the Complaint as true, those averments must be enough to raise a right to relief about the speculative level. *Id.* at 1965.

    **B. Monopolization claim**

The Sherman Act, 15 U.S.C. § 2, makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." Superficially, a claim that a defendant has actually monopolized a market requires showing of two elements: (i) the possession of monopoly power in the relevant market, and (ii) the willful acquisition or maintenance of that power. *Campfield v. State Farm Mut. Auto Ins. Co*, 532 F.3d 1111, 1117-18 (10th Cir. 2008). For purposes of this claim, "monopoly power" means "the power to control prices and power to exclude competition." *Full Draw Productions v. Easton Sports, Inc.*, 183 F.3d 745, 757 (10th Cir. 1999).

An essential component of the first element is the designation of the relevant market for the product or service; "without a definition of that market there is no way to measure the defendant's ability to lessen or destroy competition." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 457 (1993); *Campfield,* 532 F.3d at 1118 ("failure to allege a legally sufficient market is cause for dismissal of the claim"). The relevant market inquiry has two components: the geographic market and the product market. *Telecor Communications, Inc. v. Southwestern Bell Telephone Co.,* 305 F.3d 1124, 1130 (10th Cir. 2002). Although "there is no subject in antitrust law more confusing than market definition," the basic means by which a product market is defined is "reasonable interchangeability" – that is, that group of products or services that are of similar price, use, and qualities that could readily substitute for the alleged monopolist's

5

product or service. *Id.* at 1130, 1131. The relevant geographic market is "the area of effective competition," or an area which products or services from adjacent areas cannot compete on substantial parity with those offered inside the area, due to factors such as price, transportation/delivery costs, customer preferences, etc. *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1026-27 (10th Cir. 2002).

Here, the Amended Complaint does not expressly purport to identify the product or geographic markets at issue. At best, there is are two references in passing to "shuttle service competition in the entire Vail Valley region." Assuming that the reference to "shuttle service" is the Plaintiff's attempt to plead the product market, and "the Vail Valley region" is the pleading of a geographic market, the Court finds that this perfunctory allegation is insufficient to state a claim. In *Full Draw Productions*, 183 F.3d at 756, the 10th Circuit considered whether a plaintiff had adequately pled the relevant market in its complaint. It noted that the complaint "alleges the relevant market to be archery trade shows in the United States," and that that allegation "is supported by factual allegations detailing the distinct nature of the archery trade shows, their difference from gun shows, which focus only in limited part on archery, and their ability to draw a customer base of archery manufacturers, distributors, and dealers over the years." *Id.* It found this to be sufficient to plead the relevant market.

Here, the Plaintiff's allegation of "shuttle service" as the relevant product market is insufficiently conclusory. Assuming the "shuttle service" product to be more accurately characterized as "transportation services in and around the Vail Valley and to and from Denver International Airport," *Docket #* 35, ¶ 9, 10, the Amended Complaint fails to supply facts to support the Plaintiff's conclusion that the only business entities in that product market are CSS

6

and CME, to the exclusion of taxicabs, public and private buses, rental cars, and other businesses that might provide transportation services that are interchangeable with the Plaintiff's shuttle service. Unlike *Full Draw*, the Plaintiff does not plead facts that would explain why these services should not be considered part of the relevant market. Without a factual basis to support the Plaintiff's implicit assertion that CSS and CME were the only two entities serving the relevant product market, the Amended Complaint begins to resemble that in *T.V. Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992). There, the plaintiff attempted to define the relevant product market by reference only to the product that it sought to distribute, and the 10th Circuit found that to be insufficient as a matter of law to state a claim for actual monopolization. *Id.* Thus, even in the light most favorable to the Plaintiff, the Court finds that the Amended Complaint fails to adequately allege facts that would support the Plaintiff's otherwise conclusory assertion that the relevant product market consisted of only those services provided by CME and CSS, to the exclusion of all others. Without adequate pleading of the relevant product market,[4] the Plaintiff fails to state a claim for actual monopolization.

In addition, the Court finds that the Plaintiff has failed to adequately plead that the Defendants possess "monopoly power." "Monopoly power" means "<u>both</u> power to control prices and power to exclude competition." *Reazin v. Blue Cross and Blue Shield of Kansas*, 899 F.2d 951, 967 (10th Cir. 1990) (emphasis in original). Taken in the light most favorable to the

---

[4]The Court also has doubts that "in and around the Vail Valley" is sufficient to plead the relevant geographic market, as it does not purport to explain why shuttle services (or other transportation services) operating in adjacent areas could not practicably compete in the Vail Valley.

7

Plaintiff, the Amended Complaint might be read to allege that, with the demise of CSS, CME has the power to control prices for shuttle service, insofar as the Amended Complaint alleges that CME raised its prices by 35% after CSS ceased operations. But nothing in the Amended Complaint alleges – or even implies – that CME has some particular power to exclude competitors from entering the shuttle transportation market in the Vail Valley. At best, the Amended Complaint states only that "when CSS went out of business, [CME] had no shuttle service competition." *Docket # 35, ¶ 26*. An assertion that CME had no competition at the time is not the equivalent of alleging that it had the ability to prevent competition in the future. A lack of any competition to CME might reflect CME holding considerable market power at the moment, but "market power, to be meaningful for antitrust purposes, must be durable." *Reazin*, 899 F.2d at 968. Without specific factual assertions showing that CME had the ability to preserve its control over the relevant market by preventing competitors from entering, the Plaintiff has failed to adequately allege the Defendants' possessed monopoly power, and his claim for actual monopolization fails.

The Plaintiff alleges that, in the alternative to a claim for actual monopolization, he has pleaded a claim that the Defendants attempted to monopolize the shuttle transportation market. To plead a claim for attempted monopolization, the Plaintiff must allege (i) that the defendant has engaged in predatory or anticompetitive conduct; (ii) with the specific intent to monopolize; and (iii) that such conduct created a dangerous possibility of achieving monopoly power. *Spectrum*, 506 U.S. at 890-91. As with an actual monopolization claim, a claim for attempted monopolization also requires a showing of a relevant geographic and product market. *U.S. v. AMR Corp.*, 335 F.3d 1109, 1113 (10th Cir. 2003). For the reasons stated above, the Court finds

that the Plaintiff's attempted monopolization claim fails to allege the relevant geographic and product market. In addition, the Court finds that the Amended Complaint does not allege facts sufficient to plead that the Defendants' conduct created a dangerous possibility that they would achieve monopoly power. The definition of "monopoly power" in an attempted monopolization claim is the same as in an actual monopolization claim, and the Plaintiff's failure to allege any facts that would suggest that CME had the ability to prevent competition from entering the market dissipates any possibility that the Defendants' actions would allow them to achieve such power. Thus, any claim for attempted monopolization fails for the same reasons.

Finally, the Plaintiff argues that the Amended Complaint also states a claim for conspiracy to monopolize. The elements of such a claim are: (i) an agreement among two or more people to monopolize a relevant market; (ii) overt acts done in furtherance of that agreement; (iii) a specific intent to obtain monopoly power; and (iv) an appreciable effect on commerce. *Lantec,* 306 F.3d at 1028; *Tarabishi v. McAlester Regional Hosp.*, 951 F.2d 1558, 1570 (10th Cir. 1991). For the reasons stated above, the Plaintiff has failed to adequately allege that the Defendants harbored a specific intent to obtain "monopoly power." The Plaintiff alleges that Defendant Frampton "intentionally forced [the Plaintiff] out of business in his attempt to monopolize the shuttle service in Vail Valley." This might be enough to allege that Defendant Frampton harbored an intent to drive a specific competitor out of business, but such intent is not the equivalent of an intent to obtain monopoly power. Absent some allegation that the Defendants specifically intended to obtain the power to exclude competitors from filling the vacuum created by CSS's departure, the Amended Complaint does not sufficiently allege that

9

Defendant Frampton or any other Defendant harbored a specific intent to obtain monopoly power.[5] Accordingly, the Plaintiff fails to state a claim under any Sherman Act theory.

Accordingly, the Court grants the Defendants' motion to dismiss the Sherman Act claim. Generally, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is granted concomitantly with leave to replead under Fed. R. Civ. P. 15, unless it is apparent that leave to amend of the pleadings would be unduly prejudicial or futile. Here, the Plaintiff's original Complaint **(# 1)** was the subject of a Motion to Dismiss **(# 7)** raising similar issues, and the Plaintiff responded to that motion by filing the Amended Complaint. The Court assumes that, in amending, the Plaintiff considered the arguments raised by the Defendants in the initial motion and plead all of the facts available to him in response. Because the Amended Complaint remains defective after that effort, the Court is inclined to assume that the Defendant concedes that he cannot plead any additional facts that would rescue the antitrust claim. Moreover, the Court notes that in the instant motion, the Defendants specifically requested that dismissal be granted without leave to replead, and the Plaintiff's response brief does not mention, much less specifically oppose, that request. Accordingly, the Court finds that granting leave to replead a second time would be unduly prejudicial to the Defendants and would ultimately prove futile. Accordingly, the Motion to Dismiss is granted without leave to replead.

---

[5]In addition, the Court would find that the Amended Complaint does not adequately allege an agreement to monopolize. The only Amended Complaint alleges conclusorily that Defendant Frampton "conspired to monopolize the shuttle service," *Docket* # 35, ¶ 31, but does not allege whom Defendant Frampton is alleged to have conspired with. The only express allegation of Defendant Frampton conspiring with another person relates to after-the-fact events in which Defendant Frampton "conspired with his business partners and employees by instructing them to fraudulently conceal from [the Plaintiff] and everybody else how they had illegally ruined [the Plaintiff's] business and reputation." *Id.* at ¶ 28. These averments are insufficient to establish the first element of a conspiracy to monopolize claim.

### C. *Noerr-Pennington* doctrine

For purposes of completeness, the Court will briefly allege the Defendants' argument that the "anticompetitive" acts at issue here are subject to immunity under the *Noerr-Pennington* doctrine. That doctrine provides that conduct by individuals seeking to induce action by the government is immune from antitrust suits, even if the conduct is anticompetitive in nature. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379-80 (1991). The doctrine is intended to balance the business interests of the antitrust plaintiff against the constitutional rights of the antitrust defendant to petition the government. *Id.* at 380. Thus, "a concerted effort to influence public officials" is immune from antitrust action "regardless of [the actor's] intent or purpose." *Id.*

The doctrine admits to an exception where the attempt to influence governmental action is a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Id.* The sham exception arises when the actor frivolously invokes a governmental <u>process</u> for anticompetitive consequences; it does not apply where the <u>outcome</u> of the process yields the anticompetitive effect. *Id.* In other words, if the government ultimately engages in a valid action at the prompting of a competitor, the fact that that action was sought by the competitor for anticompetitive purposes is irrelevant, and the competitor is immune from antitrust liability for inducing the action. *Allied Tube and Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) ("Where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint"); *Tal v. Hogan*, 453 F.3d 1244, 1259 (10th Cir. 2006).

Once the *Noerr-Pennington* doctrine is invoked by the Defendants, the burden is on the Plaintiff to show that it does not apply. *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F.Supp.2d 1042, 1053 (D. Kan. 1999).

Here, the Amended Complaint alleges that the anticompetitive effect was the incarceration of the Plaintiff on auto theft charges; while incarcerated, the Plaintiff could not operate CSS and the business was forced to close. The Plaintiff does not allege that his incarceration was invalid; indeed, he admits that he effectively pled guilty to the charges. Thus, any anticompetitive injury occurred as the result of a governmental action that the Plaintiff does not assert was invalid, even though he may dispute the means by which the Defendants induced that action and their intent in doing so. However, because the Defendants intent is immaterial, the simple fact that the anticompetitive injury resulted from a valid governmental act induced by the Defendants is enough to immunize the Defendants' actions under the *Noerr-Pennington* doctrine.[6]

The Plaintiff's response to the motion to dismiss reveals a misunderstanding of *Noerr-Pennington*. The Plaintiff admits that, to invoke the sham litigation exception, he must show that "the lawsuit [was] objectively baseless in the sense that no reasonable litigant could expect success on the merits." Later, he appears to assume that "the lawsuit" in question is his lawsuit – that is, the antitrust claim herein. *Docket* # 38 at 11 ("The Plaintiff, through the Amended

---

[6]Admittedly, *Noerr-Pennington* immunity does not encompass fraudulent or illegal actions. *Tal*, 453 F.3d at 1260. Arguably, the intrusion into the Plaintiff's home to gather the information that was later submitted to the police could be said to be an illegal act. Nevertheless, it is not the entering of the Plaintiff's home that caused the anticompetitive injury, but rather, the Plaintiff's incarceration on charges that were admitted by him to be substantiated. Thus, the fraud/illegality exception to *Noerr-Pennington* would not apply here.

Complaint, [has] shown that the lawsuit is not baseless"). He is mistaken. He offers no citation for the argument that *Noerr-Pennington*'s sham exception turns on whether or not the antitrust claim itself has merit, and the Court is aware of no authority for that proposition. Rather, it is clear that the sham exception examines the validity of the competitor's actions in petitioning the government for relief, and deprives the competitor of *Noerr-Pennington* immunity where the competitor's request for governmental action was frivolous. Here, because the Defendants' prompting of criminal charges against the Plaintiff resulted in an admittedly valid conviction, the sham exception to *Noerr-Pennington* does not apply, and the Defendants are immune from antitrust liability for inducing those criminal charges. Because the inducing of criminal charges is the only act in the Amended Complaint that is alleged to have had anticompetitive effect, the Court also dismisses the Plaintiff's antitrust claim on *Noerr-Pennington* grounds.

**D. State law claims**

The Defendants request that, with the dismissal of the sole federal claim, the Court decline to exercise supplemental jurisdiction over the various state law claims pursuant to 28 U.S.C. §1367(c)(3). The Plaintiff's response concedes that "if the federal claims are dismissed before trial, the state claims should be dismissed as well." Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 7)** directed at the original Complaint is **DENIED AS MOOT**. The Defendants' Motion to Dismiss **(# 36)** directed at the Amended Complaint is **GRANTED**, and the Plaintiff's antitrust claim is **DISMISSED**. The Court declines to exercise supplemental jurisdiction over the remaining state law claims

pursuant to 28 U.S.C. § 1367(c)(3). Those claims are therefore **DISMISSED** for lack of federal subject matter jurisdiction. There being no further claims before this Court, the Clerk of the Court is directed to close this case.

Dated this 28th day of August, 2008

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge